FILED
HARRISBURG, PA
MAR 02 2023
PER
SH
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| George Ivan Lopez, | : Hon: Christopher C. Conner |
| Plaintiff, | : Hon: M.J. Karoline Mechalechick |
| Vs. | : |
| | : Case No: 3:21-cv-1819 |
| John Wetzel, et al., | : |
| Defendants. | : |

## PLAINTIFF RALPH STOKES' FIRST
## SET OF ADMISSIONS TO DEFENDANT

Plaintiff, Ralph Stokes, requests, pursuant to Fed. R. Civ. P., Rule 36, that Defendant John Wetzel (Wetzel) admit that each of the following facts is true, within thirty (30) days after service of this document:

1. That in May or June of 1987, Plaintiff Ralph Stokes (Stokes), was placed into solitary confinement because of his death sentence.

2. That Stokes remained confined in solitary confinement until December of 2019.

3. That Stokes has mental impairments that both predated and postdate his assignment to solitary confinement and that the Pennsylvania Department of Corrections (PADOC) knew or should have known of these impairments.

4. That Wetzel, in his role as Secretary of the PADOC, was tasked, in part, with promulgating and enforcing PADOC policies.

5. That Wetzel, in his role as Secretary of the PADOC, enforced the former Capital Case (CC) directive 6.5.8 ("Capital Case Administration"), under which CC were held in solitary confinement.

6. That before and/or during Wetzel's tenure as Secretary of the PADOC, there was a practice and policy of immediately and permanently assigning to the

Restrictive Housing Unit, newly committed inmates that had a death sentence.

7. That Wetzel was fully aware, before and/or during his tenure as Secretary of the PADOC, that the Section 4303 of the Prisons and Parole Code mandated that "solitary confinement" was only required "upon the signing of [an] execution warrant."

8. The automatic committal, mentioned in paragraph six, *supra*, of Plaintiff Stokes (Stokes) was done without individualized assessment to determine the appropriateness of placement for Stokes.

9. That before and/or during Wetzel's tenure as Secretary of the PADOC, there was a practice and policy of individualized assessment for placement of non-capital case inmates (non-caps).

10. That before and/or during Wetzel's tenure as Secretary of the PADOC, there was a practice and policy of housing non-caps within the same RHUs as CC inmates.

11. That some of the non-caps sent to the RHUs displayed signs of mental instability ("instability" meaning, but not limited to, dementia, parnoia, psychosis, split personality, depression, self-injury, suicidal ideation, etc.) of varying degrees that necessitated their immediate assignment to the RHU (upon reception in the PADOC) or their removal from the general population to the RHU.

12. That before and/or during Wetzel's tenure as Secretary of the PADOC, there were CC inmates that also displayed mental instability.

13. That before and/or during Wetzel's tenure as Secretary of the PADOC, the non-cap inmates' RHU behavior included, but is not limited to, throwing feces and/or urine on staff or other inmates.

14. That before and/or during Wetzel's tenure as Secretary of the PADOC, the non-cap inmates' RHU behavior included, but is not limited to, banging and/or kicking on their doors and tables.

15. That before and/or during Wetzel's tenure as Secretary of the PADOC, the non-cap inmates' RHU behavior included, but is not limited to, spitting on staff and other inmates.

16. That before and/or during Wetzel's tenure as Secretary of the PADOC, the non-cap inmates' RHU behavior included, but is not limited to, loud screaming and/or incessant chanting and/or unintelligible ravings and/or nensensical conversations with unseen person(s).

17. That the non-cap inmates throwing of bodily excretions and spitting occurred both indoors and outdoors.

18. That before and/or during Wetzel's tenure as Secretary of the PADOC, some CC inmates also behaved as indicated in paragraphs 13 thru 17, *supra*.

19. That before and/or during Wetzel's tenure as Secretary of the PADOC, or in the sundry positions he held during his entire career with the PADOC, he was well aware of the noise levels, in the RHUs, through, but no limited to, personal experience, common knowledge, official PADOC reports, memos or studies.

20. That before and/or during Wetzel's tenure as Secretary of the PADOC, he was aware of the RHU noise levels based on studies conducted by neutral persons/entities.

21. That Wetzel has actually worked, during his PADOC career, in an RHU(s).

22. That before and/or during Wetzel's tenure as Secretary of the PADOC, Wetzel has attended work-related seminars that included discussions and/or material relating to the harms of prolonged solitary confinement.

23. That the United States Department of Justice (DOJ), before, during, or after the year 2014, did caution and/or advise the PADOC of the long-term and/or permanent mental and/or physical effects of solitary confinement to inmates.

24. That Wetzel read the DOJ report.

25. That before and/or during Wetzel's tenure as Secretary of the PADOC, the American Civil Liberties Union (ACLU) informed the PADOC that continued and permanent housing of CC inmates (and non-caps) in solitary confinement was deleterious to their physical and psychological well-being.

26. That Wetzel read the ACLU report/documents.

27. That after being notified by one or both of the entities cited in paragraphs 23 and 25, *supra*, the PADOC, under Wetzel's stewardship, implemented—*for non-caps*—several practices and policies that would ameliorate the onerousness of solitary confinement.

28. That the "ameliorat[ions]" referenced in paragraph twentyseven, *supra*, included, but are not limited to, televisions and clocks being placed on RHU walls, and more out-of-cell time.

29. That Wetzel never undertook to ensure that *all* CC inmates, in the PADOC, received *all* the same ameliorative implementations cited in paragraph twentyeight.

30. That it was only after the settlement in *Reid v. Wetzel*, 1:18-cv-176, did the PADOC, under Wetzel's stewardship, release CC inmate from permanent solitary confinement.

31. That Wetzel has previously admitted (see *Johnson v. Wetzel*, 209 F. Supp. 3rd 766, 2016 U.S. LEXIS 127780) his awareness that permanent solitary confinement causes physical and psychological harm.

32. That Wetzel is/was aware of the *Craig Haney Report* which concerned the adverse effects of solitary confinement.

33. That before and/or during Wetzel's tenure as Secretary of the PADOC, there was a practice and policy regarding mental health care evaluations conducted by PADOC staff.

34. That before and/or during Wetzel's tenure as Secretary of the PADOC, Wetzel was aware that mental health care evaluations were conducted on CC inmates in a cursory fashion (i.e., one or two salutatory-esque questions such as: "How are you today?" or "How's it going?").

35. That before and/or during Wetzel's tenure as Secretary of the PADOC, Wetzel was aware that mental health care evaluations for CC inmates were conducted on an irregular basis at the institutions housing CC inmates.

36. That before and/or during Wetzel's tenure as Secretary of the PADOC, Wetzel was aware that mental health care evaluations for CC inmates were

conducted at the CC inmate's door as opposed to a private setting, at the institutions housing CC inmates.

37. That during Wetzel's tenure as Secretary of the PADOC, Wetzel was aware that mental health care evaluations for CC inmates, at some institution(s) housing CC inmates, were non-existent.

38. That before and/or during Wetzel's tenure as Secretary of the PADOC, there was no attempt, on behalf of the PADOC, to ascertain, by informing CC inmates of the symptoms of mental decline whether the lengthy stay in solitary conditions, were having a deleterious effect on the mental stability of CC inmates. (By "*informing*" Plaintiff means, but not limited to, notifying effected CC inmates by memo and/or orally and/or video, etc. By "*symptoms*" Plaintiff means, but not limited to: chronic and/or excessive fatigue, disinterest in previous interests, short attention span, despair, feelings of hopelessness, suicidal thoughts, etc.).

39. That Wetzel is/was aware that had a CC inmate filed a grievance seeking release from the RHU, that grievance would have been denied.

40. That Wetzel is/was aware that had a CC inmate sought release from the RHU through the institutions Program Review Committee/Program Review Team, that effort would have been fruitless.

41. That Wetzel is/was aware that many, if not all, named plaintiff's were diagnosed by qualified PADOC employees at their time of reception into the PADOC or at some point during their current incarceration.

Dated: 2-27-2023

By: _____
Ralph Stokes
AY-9034
SCI-Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426

SCI-Phoenix
Ralph Stokes, #AY-9034
P.O. Box-244
Collegeville, PA-19426

RECEIVED
HARRISBURG, PA
MAR 02 2023
PER SH
DEPUTY CLERK

To: United States
For The Middle D
Ronald Regan Feder
228 Walnut Str
P.O. Box 983
Harrisburg, Pa.

Legal - Mail