**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

GEORGE IVAN LOPEZ, et al.,

Plaintiffs,

v.

JOHN E. WETZEL, et al.,

Defendants.

CIVIL ACTION NO. 3:21-CV-01819

(CONNER, J.)
(MEHALCHICK, M.J.)

**REPORT AND RECOMMENDATION**

*Pro se* prisoner-Plaintiffs George Ivan Lopez, Darien Houser, Gerald Watkins, Ralph Stokes, Jose Uderra, and Richard A. Poplawski (collectively, "Plaintiffs") initiated this class action by filing a complaint on October 26, 2021, pursuant to 42 U.S.C. § 1983, against Defendants John E. Wetzel, Jeffery A. Beard, Martin F. Horn, and Pennsylvania Department of Corrections ("DOC") (collectively, "Defendants"). (Doc. 1). Before the Court are Plaintiffs' motions to appoint counsel and for class certification (Doc. 63; Doc. 119), Lopez's motion for preliminary injunction, and Houser's "motion for preparation by way of communication with other plaintiffs in the above captioned case by way of legal mail and or United States Postal Mail Service." (Doc. 94; Doc. 105). For the following reasons, it is respectfully recommended that the motions be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

On October 26, 2021, Plaintiffs, who are individuals presently sentenced to death and incarcerated by the Commonwealth of Pennsylvania, Department of Corrections ("DOC") at the State Correctional Institution at Phoenix ("SCI-Phoenix"), filed a complaint pursuant to 42 U.S.C. 1983 against Defendants. (Doc. 1). As part of their complaint, Plaintiffs seek class certification pursuant to Rule 23(b)(3) or, alternatively, Rule 23(b)(1) of the Federal Rules of

Civil Procedure. (Doc. 1). However, as of the date of this report and recommendation, Plaintiffs have not filed a motion seeking appointment of counsel and class certification. Plaintiff Lopez paid the required civil action filing fee on November 2, 2021, and the Court granted Plaintiffs Houser, Watkins, Stokes, Uderra, and Poplawski's individual motions to proceed *in forma pauperis* on December 21, 2021. (Doc. 22; Doc. 24).

In the complaint, Plaintiffs allege that they were held in solitary confinement under harsh conditions, including a small cell, constant illumination, lack of social interaction, lack of visitation, lack of educational services, lack of organized recreational activities. (Doc. 1, ¶¶ 22-64). Plaintiffs contend that they suffer from a variety of medical and mental health disorders, and aver that such disorders in combination with the harsh condition caused them to suffer significant physical pain and exasperated medical and mental issues. (Doc. 1, ¶¶ 90-144). Plaintiffs assert that the harsh conditions endured in solitary confinement lasted until December 3, 2019, when the DOC implemented a new policy that repositioned the environment of the Capital Case Unit ("CCU"). (Doc. 1, ¶ 65). Plaintiffs assert that their long-term solitary confinement in the CCU violated: (1) the Eighth Amendment prohibition against cruel and unusual punishment (Doc. 1, ¶¶ 167-181); (2) the Fourteenth Amendment (Doc. 1, ¶¶ 182-191); and (3) the America with Disabilities Act ("ADA") and the Rehabilitation Act (Doc. 1, ¶¶ 192-209). As relief, Plaintiffs seek damages and declaratory judgment that Defendants' conduct violated their Eighth and Fourteenth Amendment rights. (Doc. 1, at 30-31).

On February 18, 2022, Defendants filed a motion to partially dismiss Plaintiffs' complaint, along with a brief in support. (Doc. 32; Doc. 33). On February 24, 2022, Defendants filed two motions to stay discovery in this matter until the issue of consolidating

and transferring related cases pending in the Eastern District of Pennsylvania is resolved, and any forthcoming motion to dismiss or other dispositive motion is decided. (Doc. 34, at 1; Doc. 36, at 1). On March 11, 2022, the Court granted Defendants' motions to stay, directing Defendants to file status reports as to the status of the related cases in the Eastern District and any pending dispositive motions. (Doc. 40). On March 20, 2022, Plaintiffs filed a joint brief in opposition to Defendants' motion to dismiss. (Doc. 46). On August 3, 2022, the undersigned lifted the stay in this case and the related case, *Spotz v. Wetzel* ("*Spotz*"), No. 1:21-CV-01799 (M.D. Pa. Oct. 1, 2021), and *sua sponte* consolidated the cases for discovery and pretrial purposes only. (Doc. 52). On the same day, the undersigned recommended that the Court deny Defendants' motion to dismiss. (Doc. 53). On November 30, 2022, the Court adopted the undersigned's recommendation to the extent that it recommends denying Defendants' motion with respect to Plaintiffs' Eighth Amendment and statutory claims. (Doc. 86; Doc. 87). However, the Court granted Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment claims, dismissing them with prejudice. (Doc. 86; Doc. 87).

On August 29, 2022, Plaintiffs filed a motion for appointment of counsel and class certification. (Doc. 63). 68). On December 9, 2022, Lopez filed a motion for leave to file supplemental new retaliation claims and a motion for preliminary injunction, as well as a brief in support. (Doc. 93; Doc. 94). On January 12, 2023, Defendants filed an answer to the complaint. (Doc. 103). On February 3, 2023, Houser filed the "motion for preparation by way of communication with other plaintiffs in the above captioned case by way of legal mail and or United States Postal Mail Service," which the Court liberally construes to be a request for preliminary injunction. (Doc. 105); *see generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants).

## II. Discussion

### A. Motions for Appointment of Counsel (Doc. 63; Doc. 119)

Plaintiffs move the Court to appoint counsel and then direct appointed counsel to file a brief in support of class certification. (Doc. 63, at 2; Doc. 119). In the alternative, Plaintiffs request the appointment of counsel to just the six named Plaintiffs in this particular action. (Doc. 63, at 2). Plaintiffs "pray that this Court will find us six plaintiffs to be worthy, or at least adequate, representatives. In the process, we submit, the broader interests of Justice will be well served (as will the ever-important economy of the judiciary) by certification." (Doc. 63, at 2). Plaintiff Poplawski argues that appointment of counsel is warranted because: "we've already garnered a favorable recommendation from a magistrate judge[, which] speaks to the merit of our case;" "we have no money;" the ability of some Plaintiffs to present and respond to motions cannot fairly be imputed to all six co-Plaintiffs; this is a legally-complex case; and this case required extensive discovery that Plaintiffs are not capable of completing. (Doc. 74, at 1-2, 15).

Each Plaintiff has filed an individual brief in support in support of the motion. (Doc. 66). Lopez's declaration provides that he has a high school-level education with some college experience; his primary language is Spanish; he has worked as an Inmate Legal Reference Aid; he has been involved in "at least one dozen civil actions;" he has learning and concentration-related impairments, such as Dissociative Fugue Disorder; and he cannot afford an attorney. (Doc. 66, at 2). Houser's declaration provides that he has an associate degree in Arts; he is "unlettered in the law;" he has been involved in "several civil-rights

actions, pro se;" he takes psychiatric medication and opioid pain medication that interferes with his ability to concentrate and sit for long periods of time; and he cannot afford an attorney. (Doc. 66, at 3). Stokes's declaration provides that he has a high school-level education; his ability to communicate in writing is "particularly impaired;" this action is the first civil action he has been involved in; he suffers from cognitive, psychological, and emotional impairments as a result of organic brain damage and a car accident; and he cannot afford an attorney. (Doc. 66, at 4). Watkins's declaration provides that he has a tendency to withdraw and isolate himself for extended periods; he has been involved in one other civil rights action; and he cannot afford an attorney. (Doc. 66, at 5). Poplawski's declaration provides that he has a GED; he has worked as an Inmate Legal Reference Aid; he has been involved in several other civil rights actions and is the sole author of the complaint in this case; he is "apt to 'crash' and lose all interest in completing tasks;" and he cannot afford an attorney. (Doc. 66, at 6-7).

In opposition, Defendants argue that appointment of counsel is currently premature. (Doc. 68, at 7). In addition, Defendants contend certification is not appropriate because: (1) "Plaintiffs are solely seeking monetary damages;" (2) "Plaintiffs have not put forth any legal arguments as to why this would be a limited funds case.;" (3) "permitting Plaintiffs to proceed with this hybrid class of inmates with vastly different interests, would not 'promote uniformity of decision as to persons similarly situated.' *See* Fed. R. Civ. P. 23(b)(3);" and (4) "certification of this class would be burdensome to the litigation and create disparities between the various sets of damages cases filed individually by the capital prisoners." (Doc. 68, at 7-8). Finally, Defendants argue that an Order directing appointed counsel to seek class certification "would

represent an egregious intervention by the Court into the strategy and tactics utilized by appointed counsel." (Doc. 68, at 9).

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the court has discretion to request "an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). Under § 1915(e)(1), the "court may request an attorney to represent any person unable to employ counsel." The district court's appointment of counsel is discretionary and must be made on a case-by-case basis. *Tabron*, 6 F.3d at 157-58. The United States Court of Appeals for the Third Circuit has stated that appointment of counsel for an indigent litigant should be made when circumstances indicate "the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984). The initial determination to be made by the court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the plaintiff's case has some arguable merit in fact and law. *Montgomery*, 294 F.3d at 499. If a plaintiff overcomes this threshold hurdle, other factors to be examined are:

> (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the claimant to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which the case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.
>
> *Montgomery*, 294 F.3d at 499 (citing *Tabron*, 6 F.3d at 155-57).

Additionally, another practical consideration must be taken into account when considering a motion for appointment of counsel. As the Third Circuit has observed:

> … we must take note of the significant practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation. We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment. It is difficult to fault a district court that denies a request for appointment under such circumstances.
>
> *Tabron*, 6 F.3d at 157.

Turning to the *Tabron* factors, the Court finds that Plaintiffs are not entitled to appointed counsel at this time. Regarding the first factor, Plaintiffs have thus far demonstrated an ability to adequately litigate this case, as they have filed a complaint that contains clearly set forth Eighth Amendment and statutory claims and facts possessing "arguable merit" with numbered paragraphs and distinct sections for each claim. (Doc. 1); *see Montgomery*, 294 F.3d at 499. By presenting these issues in a logical manner, Plaintiffs have demonstrated their ability to comprehend the legal issues and provide facts to support their claims sufficiently. Plaintiffs have continued to demonstrate the ability to brief the matters before the Court thoroughly and coherently.

Despite Plaintiffs' incarceration, investigation of the facts is not beyond their capabilities, and they are familiar with the facts of this case. Plaintiffs claim that the issues involved in this case will require investigation. However, *pro se* litigants may use any of the discovery methods prescribed in the Federal Rules of Civil Procedure, including written interrogatories, depositions, requests for production of documents or things for inspections or copying, and requests for admission addressed to parties. 28 C.F.R. § 76.21(b). Additionally, it does not appear that this case will require testimony from expert witnesses. Plaintiffs'

allegations of Defendants' violations of their constitutional rights would be understandable to a layperson without the need for expert assistance. *See, e.g., Montgomery*, 294 F.3d at 504 (holding "expert testimony is necessary when the seriousness of the injury or illness would not be apparent to a lay person.")

The fourth *Tabron* factor, Plaintiffs' ability to retain counsel on their own, weighs in favor of granting the motion because Plaintiffs' *in forma pauperis* status demonstrates that they are unable to afford an attorney. (Doc. 24); *see Tabron,* 6 F.3d at 156. However, the Court has a duty to construe Plaintiffs' pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Plaintiffs' apparent ability to litigate this action coupled with this Court's duty to construe *pro se* pleadings liberally weigh against the appointment of counsel at this time. *See Shehadeh v. Wilkes-Barre City Police Dept.,* No. 3:21-CV-35, 2021 WL 2567020, at *2 (M.D. Pa. June 23, 2021).

Accordingly, it is respectfully recommended that the Court **DENY** Plaintiffs' motions for counsel.

B. MOTION FOR CLASS CERTIFICATION (DOC. 63)

Initially, Plaintiffs' motion for class certification must be denied as numerous courts have recognized that a *pro se* litigant lacks the capacity to represent the interests of his fellow inmates in a class action. *See Whitenight v. Harry*, No. 4:16-CV-1350, 2017 WL 2288867, at *3 (M.D. Pa. May 25, 2017); *Collinsgru v. Palmyra Board Of Education*, 161 F.3d 225, 232 (3d Cir. 1998) (non-attorneys cannot litigate the rights of others); *Osei-Afriye v. Medical College of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991); *see also Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). It is plain error to permit a *pro se* inmate

litigant to represent fellow inmates. *Whalen v. Wiley*, No. 06-809, 2007 WL 433340 *2 (D. Col. Feb. 1, 2007).

However, a *pro se* litigant seeking class certification may "continue individually to pursue his claims." *Whalen*, 2007 WL 433340 *2. Simply put, a *pro se* prisoner pursuing a civil rights claim in federal court "must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." *Whalen*, 2007 WL 433340 *2; *Nilsson v. Coughlin*, 670 F. Supp. 1186, 1190 (S.D.N.Y. 1987). Accordingly, since a *pro se* litigant cannot represent and protect the interests of a class fairly and adequately, Plaintiffs' request for class certification should be denied. *See Whitenight*, 2017 WL 2288867, at *3; *Sacaza-Jackson v. Aviles*, 2007 WL 38905 *3 (D.N.J. Jan. 4, 2007).

To the extent that Plaintiffs move for class certification, however, it is recommended that the motion be denied. Rule 23(a) provides that members of a class may only sue on behalf of a class if (1) the class is so numerous that joinder is impractical; (2) there are common questions of law or fact; (3) the claims of the representative parties are typical of the class; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If these requirements are met, the Court must determine whether a class should be certified pursuant to Rule 23(b). Plaintiffs seek certification under Rule 23(b)(1) or 23(b)(3). Plaintiffs fail to meet the minimum requirements for certification of a class action set forth in Rule 23(a), and a class may only be certified if all four requirements of Rule 23(a) are met. *Fotta v. Trustees of United Mine Workers of Am.*, 319 F.3d 612, 618–19 (3d Cir. 2003). Rule 23(b)(3) further requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

*Wilson v. Wings Over Happy Vally MDF, LLC*, 2020 WL 869889, at *2 (M.D. Pa. 2020). The party seeking certification must establish each element of Rule 23 by a preponderance of the evidence. *See In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 307 (3d Cir. 2008). For the following reasons, it is recommended that the motion for class certification be denied.

First, similar matters have been joined in the Eastern districts, for purposes of pretrial discovery, evidencing the fact that joinder is not impractical. *See Busanet v. Wetzel*, 2:21-CV-04286. In this Court, this matter has been joined with *Spotz v. Wetzel*, 1:21-CV-01799, evidencing that joinder is not impractical in this Court either. Second, Plaintiffs, and other prisoners throughout the Commonwealth, have filed these actions throughout the federal district courts, as well as in the state courts of common pleas. As Defendants argue, certifying a class here in the Middle District of Pennsylvania would actually *exclude* the vast majority of claims already filed and proceeding in other courts, actually creating a greater risk of inconsistent adjudications with respect to individual class members already party to actions in other courts.

Third, there are dissimilarities within the proposed class that have the "potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.Rev. 97, 132 (2009). Rule 23(a)(2) requires that "there are questions of law or fact common to the class." See Fed. R. Civ. P. 23(a)(2). "A putative class satisfies Rule 23(a)'s commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Wilson*, 2020 WL 869889 at *3, quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). Plaintiffs nonetheless bear the burden of demonstrating that the "defendant's

conduct was common to all of the class members." *Wilson*, 2020 WL 869889 at *3 (internal citations omitted). This requires that all class members "have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). This does not mean that a violation of the same provision of law applies to all class members, rather the claims must be productively litigated all at once through a common contention—"for example, the assertion of discriminatory bias on the part of the same supervisor." *Dukes*, 564 U.S. at 350. In this case, by Plaintiffs' own complaint, they are seeking relief on behalf of two separate groups – "all death-condemned persons who have been held in solitary confinement by the Pa. D.O.C." and "all disabled death-condemned persons who have been held in solitary confinement by the Pa. D.O.C." (Doc. 1 at 21). The very declarations filed by the Plaintiffs in this matter demonstrate different levels of education, different health issues, and different knowledge of the legal system. These dissimilarities "impede the generation of common answers."

Plaintiffs submit that all members of the class suffered from injury arising from being placed in solitary confinement. (Doc. 1, at 21). First, it is unclear what injury or harm Plaintiffs submit is common to all members of the proposed class. While Plaintiffs allege that the proposed class arises out of the same class that had been certified in the *Reid v. Wetzel* case, 1:18-CV-00176, there is no allegations of injuries or harms common to each of these Plaintiffs that would require the certification of a new class. The injuries here would range in type, allegedly arising from the wide array of effects of solitary confinement on different potential class members. Some members of the proposed class are disabled, and some are not. (Doc. 1 at 21)). The type of harm endured by the proposed class members does not depend upon a

common contention conducive to a single instance of litigation. *Dukes*, 564 U.S. at 349-50; *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 490 (3d Cir. 2018).

Finally, while Plaintiffs seek declarations that the actions of Defendants violate the Eighth and Fourteenth Amendments, the primarily relief sought is monetary damages. (Doc. 1, at 30). Unlike in the *Reid v. Wetzel* case, 1:18-CV-00176, to which Plaintiffs compare their proposed class, here, Plaintiffs generally seek monetary damages. In *Reid*, the plaintiffs sought various declaratory and injunctive relief, and simply costs and fees in terms of monetary relief. (1:18-CV-00176, Doc. 1). Claims for monetary damages would be "individualized relief" as each plaintiff may have suffered varying amounts of harm. Where plaintiffs solely seek monetary damages, their claims may be certified only under Rule 23(b)(3). *Sourovelis v. City of Philadelphia*, 320 F.R.D. 12, 26 (E.D. Pa. 2017). Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3).

Similar to how the undersigned finds that Plaintiffs cannot meet the commonality requirement of Rule 23(a), the Court also concludes that Plaintiffs cannot meet the predominance requirement of Rule 23(b)(3).[1] Predominance is met where a district court finds that "the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Wilson,* 2020 WL 869889, at *5 (internal citations omitted). As noted, *supra*, Plaintiffs do not

[1] It is not uncommon for courts to analyze the commonality and predominance elements together. *Wilson*, 2020 WL 869889, at *5; *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (2018) (collecting cases).

make allegations of common injuries or harm. Plaintiffs have not met their burden of proof establishing commonality and predominance under Rule 23. Claims that rely on individualized evidence (as they would here) are unsuited to class certification. *Wilson*, 2020 WL 869889, at *6.

For these reasons, it is respectfully recommended that the Court **DENY** Plaintiffs' motion for class certification.[2]

C. MOTIONS FOR PRELIMINARY INJUNCTIONS – STANDARD OF LAW

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.") (citation omitted). "[T]he Court of Appeals for the Third Circuit has observed that 'upon an application for a preliminary injunction to doubt is to deny.' " *Susquehanna Commercial Fin., Inc. v. Vascular Res., Inc.*, No. 1:09–CV–2012, 2010 WL 95127, at *4 (M.D. Pa. Jan. 6, 2010) (quoting *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937)). Moreover, issuance of such relief is at the discretion of the trial judge. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chamberlain*, 145 F. Supp. 2d 621, 625 (M.D. Pa. 2001).

In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors: "(1) likelihood of success on the merits; (2) irreparable harm resulting from a denial of the relief; (3) the harm to the non-

[2] Because the Court finds that Plaintiffs have not met their burden of proof establishing commonality and predominance, the Court will not address the other Rule 23 factors at this time.

moving party if relief is granted; and (4) the public interest." *United States v. Bell*, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003); *see also Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction."). It is the moving party who bears the burden of satisfying these factors. *Bell*, 238 F. Supp. 2d at 699. "Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

"[A]n essential prerequisite to the grant of a preliminary injunction is a showing by the movant of irreparable injury pendente lite if the relief is not granted."[3] *United States v. Pennsylvania*, 533 F.2d 107, 110 (3d Cir. 1976). A preliminary injunction "may not be used simply to eliminate a possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "[T]he irreparable harm must be actual and imminent, not merely speculative." *Angstadt ex rel. Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002). "[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat . . . .' " *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted). "A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent future irreparable harm." *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997) (emphasis in original).

[3] *Pendente lite* is a Latin term meaning "while the action is pending" or "[d]uring the proceeding or litigation." *Black's Law Dictionary* 1154 (7th ed.1999).

Moreover, "[t]he 'requisite feared injury or harm must be irreparable — not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.' " *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added). "The key word in this consideration is irreparable . . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (emphasis in original).

In addition, to the extent that Lopez seeks to enjoin non-parties in this litigation, he must make a particularly exacting showing. It is clear that "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought." *Elliott v. Kiesewetter*, 98 F.3d 47, 56 (3d Cir. 1996) (citing Fed. R. Civ. P. 65(d)); *Robertson v. Samuels*, No. 3:13-CV-2500, 2014 WL 347007, at *5 (M.D. Pa. Jan. 30, 2014), *aff'd*, 593 F. App'x 91 (3d Cir. 2014); *see Victor v. Moss*, No. 1:20-CV-425, 2021 WL 867582, at *4 (M.D. Pa. Jan. 6, 2021), *report and recommendation adopted sub nom. Victor v. Wetzel,* No. CV 1:20-425, 2021 WL 527483 (M.D. Pa. Feb. 12, 2021).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute. Specifically, 18 U.S.C. § 3626 limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are further instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

These principles apply with particular force to motions for preliminary injunction, like the motion filed here by Lopez, which seek to enjoin the day-to-day operations of a prison. Such requests are particularly intrusive and disruptive of prison operations and "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (3d Cir. 1995). Indeed, such requests, while frequently made by inmate-plaintiffs, are routinely rebuffed by the courts which recognize that prospectively enjoining potential disciplinary proceedings could be highly disruptive of institutional order. *Levi v. Holt*, 193 F. App'x 172, 173 (3d Cir. 2006); *McGee v. Scism*, No. 3:CV-10-2463, 2011 WL 13192729, at *1 (M.D. Pa. July 19, 2011), *aff'd*, 463 F. App'x 61 (3d Cir. 2012).

D. LOPEZ'S MOTION FOR PRELIMINARY INJUNCTION (DOC. 94)

Lopez seeks a preliminary injunction "compelling the defendants[ and t]heir successor, agents, employees, and all persons acting in concert with them to cease all physical and mental abuse, retaliation, and harassment upon [Lopez]." (Doc. 94, at 3). More specifically, Lopez seeks an Order directing the named individuals to: "[s]top interfering with his legal mail, access to the court and violation of the Eighth and Fourteenth Amendment, also [c]ease the abuse, harassment, [d]eprivation of sleep, [p]hysical and mental torture, [c]ease/[s]top the 24-7, illuminated cell, and provide [Lopez] with the necessary eye care due to injuries suffered from the 24-7, illuminated cell." (Doc. 95, at 4). Lopez asserts that there is a reasonable likelihood of success on the merits of this case, he faces substantial threat of irreparable harm, the threatened harm to him outweighs any harm the injunction may cause the non-moving parties, and the public interest will not be disservice by a preliminary injunction. (Doc. 94, at 1-3; Doc. 95, at 1-4).

In opposition, Defendants argue that the preliminary injunction should be denied because: (1) Lopez filed the motion against individuals who are not named as defendants in this case; (2) Plaintiffs have not demonstrated a likelihood of success on the merits of their claims; and (3) Lopez has not shown any actual concrete injury arising from the allegations of interference with legal mail and access to courts. (Doc. 99, at 9-12). Defendants also aver that the Court "should decline to direct Defendants to modify their day to day interactions with Plaintiffs," because the Court "becoming intimately enmeshed in the day to day operation of the prison would result in greater harm to the Department and does not serve the public interest." (Doc. 99, at 14).

Judged against the above-mentioned standards, the undersigned concludes that Lopez's motion for preliminary injunctive relief fails for several reasons. First, the undersigned notes that Lopez has failed to provide any support for his request for preliminary injunctive relief. Federal Rule of Civil Procedure 65(b)(1)(A) provides that a temporary restraining order ("TRO") may be issued "*only if* . . . specific facts in an *affidavit or verified complaint* clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A) (emphasis added). Given the mandatory nature of this language, courts in the Third Circuit, including the Court of Appeals, have frequently rejected similarly unsupported requests for temporary injunctive relief. *See, e.g., Young v. Medden*, 241 F. App'x 45, 47 (3d Cir. 2007) (upholding denial of TRO where prisoner "had not provided any evidence, outside of his allegations, to support his claims of wrongdoing"); *Moneyham v. Potter*, No. 3:15-CV-436, 2015 WL 1198080, at *1 (M.D. Pa. Mar. 16, 2015) (denying TRO request because "Plaintiff has cited no evidence to support his claims" leaving nothing but "his bare, conclusory allegations" of misconduct); *PharmaSeq, Inc. v. Estate of Griess*, No. 15-CV-00041, 2015 WL 620802, at *2 (E.D. Pa. Feb. 11, 2015) (denying TRO where plaintiff failed to comply with the evidentiary requirements of Rule 65(b)(1)(A)). Lopez has not presented any argument as to his likely success on the merits of his claims. Rather, he only sates the following:

> There is a reasonable likelihood that the Plaintiffs' will prevail on the merits. Since the filing of the above caption matter the defendants have been retaliating against the Plaintiff Lopez for the exercise of their constitutional rights to access the court. All unethical and adverse conduct is to deter the Plaintiffs' from exercising their constitutional rights to access the Court and rights [t]o litigate their complaints.
>
> (Doc. 94, at 1-2).

Based on the foregoing, the undersigned would be justified in recommending dismissal on this basis alone.

Next, the motion for preliminary injunction should be denied because the individuals whose conduct Lopez seeks to enjoin are not named as defendants in this action. Lopez has filed this motion for preliminary relief against individuals who are not named as defendants in the instant action seeking relief which is unrelated to the claims in this case. The remaining claims in this action based upon Plaintiffs' long-term solitary confinement in the CCU are: (1) violation of the Eighth Amendment prohibition against cruel and unusual punishment; and (2) violation of the ADA and Rehabilitation Act. (Doc. 1, ¶¶ 167-181, 192-209). Lopez's motion, if granted, would enjoin all prison staff in the future from issuing disciplinary citations against Lopez which he deemed to be retaliatory arising out of any incidents in the future.

Construed in this fashion, Lopez's motion for preliminary injunction runs afoul of the:

> "[G]eneral rule that a court may not enter an injunction against a person who has not been made a party to the case before it." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996) (citing *Scott v. Donald*, 165 U.S. 107, 117, 17 S. Ct. 262, 41 L.Ed. 648 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit.")). Indeed, courts have refused to issue injunctions against non-parties. *See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*, 523 F.Supp.2d 328, 334–35 (S.D.N.Y. 2007) (the court denied the defendant's motion for a preliminary injunction against the Federal Energy Regulatory Commission because it was not a party to the suit and it was not an "officer, agent, servant, employee, or attorney" of any party); *Williams v. Platt*, Civ. No. 03–281–C, 2006 WL 149024 at *2 (W.D. Okla. Jan. 18, 2006) (unpublished) (the court denied the plaintiff's motion for an injunction noting that he had "not established a relationship between the preliminary injunction and the underlying civil rights claim, and he seeks to bind non-parties without any suggestion of active concert or participation by the named defendants"). Moreover, once a court has issued an injunction against a party, that injunction may only be enforced against non-parties that are officers, agents, servants, employees, or attorneys of a party, or ones that are in active concert or participation with such non-parties or the party itself. Fed. R. Civ. P. 65(d)(2). To be bound by an injunction, a "non-party must have constructively had his day in court." *Harris County, Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 314 (5th Cir. 1999) ("the relevant

inquiry is . . . whether [the non-party] had such a key role in the corporation's participation in the injunction proceedings that it can be fairly said that he has had his day in court in relation to the validity of the injunction.") (citation omitted) (emphasis in original).

*Cramer v. Bohinski*, No. 1:22-CV-583, 2022 WL 16748604, at *4 (M.D. Pa. Nov. 7, 2022) (quoting *Banks v. Good*, No. 06-CV-253, 2011 WL 2437061 (W.D. Pa. Apr. 20, 2011), *report and recommendation adopted*, 2011 WL 2418699 (W.D. Pa. June 14, 2011)).

Notwithstanding the fact that Lopez seeks the Court to enjoin nonparties, the motion for preliminary injunction should be denied because most of the relief Lopez seeks is completely unrelated to the allegations contained within the complaint. *See Ball v. Famiglio*, 396 F. App'x 836, 838 (3d Cir. 2010) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (affirming denial of injunction sought on the basis of "new allegations of mistreatment that are entirely different from the claim raised and the relief requested in [plaintiff's] inadequate medical treatment lawsuit")). In the complaint, Plaintiffs bring remaining claims for violations of the Eighth Amendment and ADA and seek monetary damages and declaratory judgment "that the defendants' conduct—on its very face and as applies to these plaintiffs—constituted cruel and unusual punishment under the Eighth Amendment to the U.S. constitution." (Doc. 1, at 30). Conversely, in the motion for preliminary injunction, Lopez asserts claims of access to court, retaliation, and harassment. (Doc. 94; Doc. 95). The requests in the motion pertain to alleged interference with access to the Court, deprivation of sleep, physical and mental torture, and failure to provide eye care. (Doc. 94; Doc. 95). Lopez has not alleged any reason to believe that Defendants' actions are ongoing, that any particular medical care will not be provided in the future, or that, if it is not, any resulting harm would be irreparable. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000) ("the risk of

irreparable harm must not be speculative"). Moreover, Lopez may not raise and litigate new claims in a motion for preliminary injunction, either against a named Defendant or non-party.

Given the fact that the issues raised in Lopez's motion involve persons who are not before this Court and potentially entail future disciplinary matters, incidents which bear no direct legal, logical, topical, or temporal relationship to the claims in this case, this motion for preliminary injunction should be denied. *See Ball*, 396 F. App'x at 838.

Nevertheless, out of an abundance of caution, the undersigned will analyze each of Lopez's allegations *seriatim* to ensure that injunctive relief is not warranted. First, to the extent Lopez alleges that he is being subjected to harassment and mistreatment, he cannot establish a likelihood of success on the merits. It is well-settled that mere "verbal reprimands," including "threats and harsh words," cannot form the basis for a retaliation claim. *See, e.g., Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (a constitutional retaliation claim cannot rest on mere "verbal reprimands"); *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) ("Mere threats and harsh words are insufficient"); *Boyd v. Larson*, No. 1:16-CV-01789, 2017 WL 1904278, at *5 (M.D. Pa. Apr. 21, 2017) (noting that "[r]ough words are common in prison" but do not "deter 'ordinary prisoners' from filing actions") (quoting *Root v. Towers*, No. 99-CV-70867, 2000 WL 424193, at *2 (E.D. Mich. Mar. 31, 2000)). Moreover, while Lopez generally refers to retaliation in several places throughout his motion, most of his allegations are untethered to any specific protected activity.

Alternatively, to the extent that Lopez is attempting to allege a stand-alone constitutional violation, "[t]he law is settled that the use of words, even if violent, does not constitute an assault cognizable under § 1983." *Bartelli v. Lewis*, No. CIV.A. 3:CV040908, 2005 WL 2300362, at *8 (M.D. Pa. Sept. 9, 2005), *report and recommendation adopted,* No.

CIV.A. 3:CV-04-0908, 2005 WL 2406048 (M.D. Pa. Sept. 29, 2005). Rather, "the verbal threats must be accompanied by some reinforcing act that 'escalated the threat beyond mere words.'" *Boyd*, 2017 WL 1904278, at *5 (quoting *Lewis v. Wetzel*, 153 F.Supp.3d 678, 698 (M.D. Pa. 2015)). No such allegations have been made in this case. Finally, Lopez has failed to allege any actual threat of irreparable injury based on these actions. Offending words, insults, "obscene gestures and language," and "foul gossip" are insufficient to establish a "clear showing of immediate irreparable injury." *Boyd*, 2017 WL 1904278, at *5 (quoting *Continental Group, Inc.*, 614 F.2d at 359).

Lopez also seeks a preliminary injunction to prevent prison officials from opening his legal mail and interfering with his access to the court. (Doc. 94, at 2). Specifically, Lopez complains that Defendants have "been deliberately interfering with [his] incoming and out going legal mail, sending it back to the courts and attorneys . . . ." (Doc. 94, at 2). However, as presented, Lopez has not demonstrated a reasonable possibility of success on the merits of his access to the courts claim. To show a cognizable injury in a First Amendment access to the courts claim, "the inmate must 'demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim.' " *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Lopez does not allege, and provides no supporting evidence which indicates, that Defendants have interfered with his legal mail or that any opening of his legal mail was not related to a legitimate penological interest or hindered the pursuit of a nonfrivolous claim. *See Oliver*, 118 F.3d at 177-78; *Calipo v. Wolf*, No. 18-CV-320, 2018 WL 7412835, at *5 (W.D. Pa. Nov. 21, 2018); *see also Booze v. Wetzel*, No. 1:12-CV-1307, 2012 WL 6137561, at *6 (M.D. Pa. Nov. 16, 2012) ("[T]he bare allegation that

some item of [inmate] mail was opened, without more, does not establish a likelihood of success on the merits [on an access to the courts claim] for this inmate.").

With respect to the claim that Lopez is subjected to 24-hour illumination in his cell, this claim was not raised in the complaint and, consequently, there is no likelihood of success on the merits. (Doc. 1; Doc. 95); *see James v. Varano*, No. 1:14-CV-01951, 2017 WL 895569, at *5 (M.D. Pa. Mar. 7, 2017) (finding plaintiff cannot demonstrate likelihood of success on merits where 24-hour illumination claim was not raised in amended complaint). Specifically, Lopez next requests injunctive relief to "cease/stop the 24-7, illuminated cell, and provide Plaintiff Lopez with the necessary eye care due to injuries suffered from the 24-7, illuminated cell." (Doc. 95, at 4). Lopez claims Defendants are denying him the opportunity to seep more than two hours a day due to continuous lighting in the cell. (Doc. 95, at 2). Notably, all of Lopez's requests or preliminary injunctive relief are unrelated to the underlying claims set forth in the complaint which involve conduct which occurred while Plaintiffs were in solitary confinement. Because the injunctive relief sought is separate from the allegations of the underlying amended complaint, Lopez cannot demonstrate that there is a likelihood of success on the merits. *See Ball*, 396 F. App'x at 838

Finally, Lopez claims "[t]he threatened injuries to the Plaintiffs out weighs any harm proposed injunction may cause defendants," and "the public interest is well served by protecting the constitutional rights of all its members, including prisoners . . . ." (Doc. 94, at 3). Given the Supreme Court's instruction that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment," injunctive relief at this stage would not be in the public interest. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Regarding Lopez's request for a Court Order directing Defendants to refrain from

retaliatory and harassing behavior, federal courts typically do not interfere with the business of running federal prisons, so granting these motions would violate societal norms. *See Sandin*, 515 U.S. at 482.

In sum, at this stage, an assessment of the factors that govern the issuance of such relief under Rule 65 weighs against Lopez. Lopez has not shown a likelihood of success on the merits of his Eighth Amendment and ADA claims. Further, Lopez has not demonstrated that enjoining these alleged practices will cause him to endure the type of harm "which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co.*, 882 F.2d at 801; *see also Mathis v. Dauphin Cty. Prison*, No. 3:CV–12–1317, 2012 WL 3960455, at *4, 7 (M.D. Pa. Aug. 6, 2012) *report and recommendation adopted* 2012 WL 3960421 (M.D. Pa. Sept. 10, 2012) (finding that an inmate may seek monetary damages from state prison officials pursuant to 42 U.S.C. § 1983 based on officials' Eighth Amendment violations). Based on the above, Lopez has not met his burden of showing that all four factors favor preliminary relief. *See Opticians Ass'n of America*, 920 F.2d at 192; *Bell*, 238 F.Supp.2d at 699; *see also Millhouse v. Fasciana*, 721 F. App'x 109, 111 (3d Cir. 2018) ("The failure to establish any element . . . renders a preliminary injunction inappropriate.") (quoting *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014)).

Accordingly, it is recommended that the Court **DENY** Lopez's motion for preliminary injunction. (Doc. 94).

E. HOUSER'S MOTION FOR PRELIMINARY INJUNCTION (DOC. 105)

Houser seeks a preliminary injunction permitting him "to communicate with the Defendants for preparations for pretrial and trial purposes," averring that the only way he can participate in this civil action "is through the U.S. Postal Mail Service, legal mail or if

[Defendants] provide virtual communication for [Houser] due to [his] current condition." (Doc. 105, at 9-10). In addition, Houser complains of inadequate access to the law library and states, "I've been requesting to see Mr. G or a psychiatrist, as to date, I've been given the run around." (Doc. 105, at 10).

Upon consideration of the above-mentioned standards, the undersigned finds that Houser's motion for preliminary injunction should be denied. First, Houser has not presented any argument as to his likely success on the merits of his claims. *See, e.g., Young*, 241 F. App'x at 47; *Moneyham*, 2015 WL 1198080, at *1; *PharmaSeq, Inc.*, 2015 WL 620802, at *2. Next, Houser's motion, if granted, would circumvent prison regulations by requiring all parties to communicate via U.S. Postal Service or virtual communications. This request runs afoul of the "general rule that a court may not enter an injunction against a person who has not been made a party to the case before it." *Cramer*, 2022 WL 16748604, at *4 (quoting *Additive Controls & Measurement Sys.*, 96 F.3d at 1394). Furthermore, Houser seeks a preliminary injunction to prevent prison officials from opening his legal mail and interfering with his access to the court. (Doc. 105, at 9-10). However, Houser does not allege, and provides no supporting evidence which indicates, that he is not presently able to communicate with Defendants and other Plaintiffs, or that the prison has interfered with his legal mail or hindered the pursuit of a nonfrivolous claim. *See Oliver*, 118 F.3d at 177-78; *see also Booze*, 2012 WL 6137561, at *6 ("[T]he bare allegation that some item of [inmate] mail was opened, without more, does not establish a likelihood of success on the merits [on an access to the courts claim] for this inmate."). Lastly, given the Supreme Court's instruction that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment," injunctive relief at this stage would not be in the public interest. *See Sandin v.*

*Conner*, 515 U.S. 472, 482 (1995). Regarding Houser's request for a Court Order directing "Mr. G" or another psychiatrist to see him, federal courts typically do not interfere with the business of running federal prisons, so granting these motions would violate societal norms. (Doc. 105, at 10); *see Sandin*, 515 U.S. at 482.

In sum, at this stage, an assessment of the factors that govern the issuance of such relief under Rule 65 weighs against Houser. Houser has not demonstrated that enjoining these alleged practices will cause him to endure the type of harm "which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co.*, 882 F.2d at 801. Houser has not met his burden of showing that all four factors favor preliminary relief. *See Opticians Ass'n of America*, 920 F.2d at 192; *Bell*, 238 F.Supp.2d at 699; *see also Millhouse*, 721 F. App'x at 111 ("The failure to establish any element . . . renders a preliminary injunction inappropriate.").

Accordingly, it is recommended that the Court **DENY** Houser's request for preliminary injunctive relief. (Doc. 105).

## III. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that the Court deny Plaintiffs' motions to appoint counsel and for class certification (Doc. 63; Doc. 119), Lopez's motion for preliminary injunction (Doc. 94), and Houser's motion for preparation by way of communication with other plaintiffs in the above captioned case by way of legal mail and or United States Postal Mail Service. (Doc. 105).

**BY THE COURT:**

**Dated: March 13, 2023**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

GEORGE IVAN LOPEZ, et al.,

Plaintiffs,

v.

JOHN E. WETZEL, et al.,

Defendants.

CIVIL ACTION NO. 3:21-CV-01819

(CONNER, J.)
(MEHALCHICK, M.J.)

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **March 13, 2023**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: March 13, 2023**

s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**