Case 3:21-cv-01819-CCC-KM Document 127 Filed 03/30/23 Page 1 of 7

FILED
HARRISBURG, PA
MAR 30 2023
PER ___JRL___
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **George Ivan Lopez** et al., | : | No. 21-CV-1819 |
| Plaintiffs, | : | (Hon. Christopher C. Conner) |
| v. | : | (Hon. Karoline Mehalchick, M.J.) |
| **John E. Wetzel** et al., | : | |
| Defendans. | : | § 1983 Civil Rights |

# Objections
## to Report & Recommendation

Perhaps because she was burdened by a plethora of other motions made by my co-plaintiffs, the Honorable Chief Magistrate Judge Karoline Mehalchick issued a report (dated 3/13/23) in which, I respectfully submit, she cursorily analyzed the propriety of our appointment-of-counsel request, and in which she made a number of errors of law and of logic. I am compelled to lodge these eight concise objections and ask that Judge Mehalchick's recommendation *not* be followed by this Court. This Court, instead, should seek counsel on our behalf.

This case involves six uneducated prisoners hoping to achieve compensation for years of horrendous, gratuitous suffering in solitary confinment. All the while, their mental health needs were severely neglected, leaving them profoundly damaged—just as the widely-known clinical literature predicted it would. The very nature of their claim involves severe inhibitions of major life activities such as thinking and communicating. Is this an undeserving group?

Our claims are truly substantial; we are certified as indigent; and we cannot possibly investigate and present our factually and legally complex case. Attempting to find counsel for us is abdundantly justified.

1

## Objection 1
**The report fails to consider this case in context.**

In my brief (doc. 74) supporting our joint motion (doc. 63), I took pains to give context to this case: I noted the dozens of near-identical cases clustered primarily in the Eastern District; I reviewed how counsel requests have been handled there—by appointing counsel to a designated lead case; and I observed that the defendants, nevertheless, have defied the Eastern District judges' express expectation of litigating common legal issues in that lead case: "the defendants are hoping to evade the expertise of professionals and secure a broad judgment in this pro se action." Doc. 74 at 7.

The defendants are employing a bad-faith litigation strategy: they've picked this group of plaintiffs to speedball through the process. So the broader interests of justice—and the interests of 50 other plaintiffs—requires appointment of counsel here to help level the playing field.

The Third Circuit Court of Appeals, in *Tabron v. Grace* itself, tells us that the factors enumerated therein are "not meant to be exhaustive." 6 F.3d 147, 157 (1993). This case—as the vanguard of a colum of identical cases—presents special circumstances. But the report fails to consider the broader context. That, I contend, is an error.

## Objection 2
**The report fails to address the merit of our claims.**

Despite the outsized importance that precedent and common-sense place upon *merit*, the report jumps over that threshold inquiry. Is it safe to assume that, since the report applies the *Tabron* test, it implicitly endorses the merit of our claims?

Even if so, there is a spectrum of meritoriousness from *plausible* and *arguable* to truly *substantial.* Since I contend that our claims fall on the stronger end of that scale, I

hope this Court, in reviewing the report *de novo*, gives proper weight to the gravity of our claims, and explicitly says so.

## Objection 3
### The report incorrectly analyzes our collective ability to litigate.

The report, at 4, cites our initial complaint, which is considered "logical" and sufficient[]"; the report refers to our briefs as "coherent[]"; all this gives rise to an "apparent ability to litigate this case" and defeats our request for counsel. *Id.* at 8. But this superficial analysis ignores the guidance provided by the Third Circuit: the "ability to present and respond to motions . . . does not conclusively establish [plaintiffs'] ability to present [their] own case[s]." *Parham v. Johnson*, 126 F.3d 454, 459 (1997).

Furthermore, the whole purpose of my individual supporting brief was to emphasize that our supposed ability to litigate—such as it is—is only really possessed by one or two of us, and must not be imputed to all co-plaintiffs. It was not out of boastfulness that I revealed my sole authorship of the complaint and briefs opposing dismissal; this group, collectively and on average, is severely impaired, as our sworn declarations attest.

If anything, this Court might recognize that a moderately capable plaintiff has volunteered to aid some of his fellows who are in especial need of it. Now, that plaintiff has reached the limit of his amateur abilities. A just reward, I submit, might be some professional help for that guy who did his best, and for all of them. Why didn't Judge Mehalchick even consider this?

## Objection 4
### The report fails to address the complexity of the case.

Nowhere in the report's three-paragraph analysis section is this *Tabron* factor discussed. But it is thoroughly treated in my supporting brief on pages 12-14. I respect-

3

fully ask this Court to consider my arguments.

## Objection 5
### The report errs in analyzing the plaintiff's ability to investigate.

The report, at 7, conclusorily find that "investigation of the facts is not beyond [the plaintiffs'] capabilities." No mention is made about the 23,500 documents I referenced in my brief, at 15, which were required—for starters—in the similar predecessor case *Reid v. Wetzel*. No mention is made of the in-cell property restrictions I cited. This Court should undertake a more thorough analysis of this factor.

My biggest reservation about this portion of the report, however, is that it essentially dismisses this *Tabron* factor because the plaintiffs, like all pro se litigants, may use any of the discovery methods prescribed by the rules. By that logic, this factor would weigh against *every* motion for appointment of counsel. It's like saying that appointment of counsel is never appropriate merely because the rules of civil procedure exist.

This section of the report, I respectfully contend, is poorly reasoned. This Court should not follow it.

## Objection 6
### The report neglects to consider whether the case is likely to involve credibility determinations.

The report's abbreviated treatment of our appointment request fails to consider this *Tabron* factor, too, despite the arguments appearing on pages 15 and 16 of my supporting brief.

## Objection 7
**The report erroneously finds that expert testimony will not be required.**

In denying qualified immunity, this Court found that the plaintiffs' Eighth Amendment claim centers around the defendants' failure to provide adequate mental health treatment. While the obviousness of our needs would surely have been apparent to a layperson, the specifics entail specialized knowledge far beyond the ken of the average lay juror—even the average medical doctor.

The deleterious effects of solitary confinement are fully understood only by niche scholars and practititioners in the field of psychiatry. This case—if it were to be litigated properly, of course—would require not just experts, but dedicated specialists, of which there are only a handful in the country. It's not hard to envision this case—in an ideal world—involving a battle between top-flight psychiatrists.

The report's contention otherwise is illogical. At worst, it represents a patently erroneous factual finding to which this Court should not subscribe.

## Objection 8
**The report errs by balancing the plaintiffs' indigence against the Court's duty to construe the pleadings liberally.**

In the final paragraph of the report's analysis, it is found that the plaintiffs' inability to afford an attorney weighs in favor of granting their request for counsel, "however," the report says on page 8, the Court's duty to give liberal construction to the plaintiffs' papers implicitly neutralizes this factor.

First, that's an *non sequitur*. IFP status has nothing to do with how pro se papers are construed by courts. The connection, I respectfully submit, is irrational enough to constitute arbitrariness.

5

Second, as I *preemptively* argued in my brief on page 11, the proposition that nobody needs an attorney because of liberal judicial construction doctrines is illogical on its face and would weigh against every single appointment request.

I respectfully ask this Court to shoot a bolt through the heart of this false proposition. It's bad law. It appears far too often in memoranda rejecting requests for counsel, as if it were a favorite crutch being weakly leaned upon by courts who are too harried to explain the real reasons that counsel is unavailable, even in deserving cases.

## Conclusion

WHEREFORE, I respectfully request that this Court decline to follow the relevant portion of Judge Mehalchick's report; I request that this Court make an attempt to locate counsel to represent us.

Respectfully submitted,

*(signature)*

**Richard A. Poplawski**
SCI Phoenix, #KB7354
1200 Mokychic Drive
Collegeville, PA 19426

March 27, 2023
Date

---

### Certificate of Timely Filing

Subject to the penalties prescribed by 28 U.S.C. § 1746, I verify that I received my copy of Judge Mehalchick's Report and Recommendation on Friday, **March 17, 2023**. These objections are timely filed under Rule 72.3: this document was placed in the prison mail receptacle, marked for first-class U.S. Mail, on Monday, **March 27, 2023**.

### Certificate of Service

I hereby verify that I have served a copy of these objections on the following parties via first-class U.S. Mail (postage prepaid) on the date indicated above:

| | |
|---|---|
| **Hon. Karoline Mehalchick, M.J.**<br>U.S. Dist. Ct. for the M.D. of Pa.<br>228 Walnut Street<br>P.O. Box 983<br>Harrisburg, PA 17108 | **Kim Adams**<br>PADOC Office of General Counsel<br>1920 Technology Parkway<br>Mechanicsburg, PA 17050 |

Smart Communications/PADOC

SCI- Phk

Name Dynlausk

Number KB7354

P.O. Box 33028

St Petersburg FL 33733

1700 Moleyche Dr
Glenville PA
19426

PA DEPARTMENT OF
CORRECTIONS
INMATE MAIL

neopost 03/28/2023
US POSTAGE $000.84⁰
FIRST-CLASS MAIL

RECEIVED
HARRISBURG, PA
MAR 30 2023
PER ____
DEPUTY CLERK

Clerk of the Court
U.S. Dist. Ct for M.D. Pa
228 Walnut St
Box 983
Harrisburg, PA 17108

17108-2983 C000